UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                       Case Number 16-20436

v.                                         Honorable David M. Lawson

SHIRLEY DOUGLAS,

              Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Shirley Douglas has filed a motion asking the Court to reduce her sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Douglas has served about nine months of a 132-month prison sentence for unlawfully distributing prescription painkillers. She argues that a sentence reduction is justified by her age (72) and race (African American) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government contends that Douglas has not shown extraordinary and compelling reasons for release, and it maintains that she would be a threat to public safety if released. Douglas has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, and consideration of the factors in 18 U.S.C. § 3553(a) tip the scale decidedly against release. Because Douglas has not demonstrated that immediate release is appropriate or that she qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Defendant Shirley Douglas pleaded guilty to one count of conspiracy to distribute controlled substances, 21 U.S.C. § 846. On December 30, 2019, she was sentenced to 132 months

in prison.  She surrendered to the custody of the Bureau of Prisons on March 11, 2020, and she presently is confined at FPC Alderson in Alderson, West Virginia, which is a minimum-security federal prison camp that houses around 550 female inmates.  Since her surrender into custody after a deferred surrender date, Douglas has served just under nine months or about 7% of her prison term.  Public records of the Bureau of Prisons (BOP) indicate that the defendant is scheduled to be released from prison on July 23, 2029.  Douglas is 72 years old.

On August 24, 2020, Douglas filed her *pro se* renewed motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  The Court appointed counsel and established a briefing schedule.  The government filed a response opposing the motion on the merits.  Douglas's appointed counsel filed a reply brief in support of the motion further arguing that the defendant's age and race qualify her for early release.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates and none among staff at the Alderson facility, although 10 inmates and six other staff previously were infected but now have recovered.  Reports indicate that no inmates have died.  *See* https://www.bop.gov/coronavirus/.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate release."  *Ibid.*  "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after [s]he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt

of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Douglas relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, No. 20-3701, --- F.3d ---, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a

motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

A.

Addressing the first element — extraordinary and compelling reasons — Douglas argues that her age and race make her especially vulnerable to complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where she "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that [she] cannot receive [while in custody]), or where [s]he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Id.* at *2 n.6.

The government concedes that the request for release has been administratively exhausted and that the defendant's age qualifies as a recognized serious medical risk factor. Nevertheless, the government argues that, even if the defendant does medically qualify for release, she should not be released because the seriousness of her crime — involving bogus prescriptions for millions of doses of regulated narcotics and more than $40 million in fraudulent billings for the same to Medicare and Blue Cross — demonstrates her threat to the community. The government also points out that relieving the defendant from more than 95% of her original custodial term dramatically would undermine the sentencing objectives of that punishment.

The defendant is justifiably concerned about the health risks posed by her incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention

- 4 -

("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The defendant's age (72) places her within the highest category of risk by age, where the CDC generally advises that there is an increasing risk of severe illness with increasing age, and it designates those who are 65 or older as being within the cohort at highest risk. *See ibid.* ("In general, your risk of getting severely ill from

COVID-19 increases as you get older. In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older.").

Douglas also argues that her race elevates her risk of severe consequences from infection with the coronavirus. But, as this and other federal courts have recognized, the fact of an inmate's race by itself does not constitute a risk factor for COVID-19 in the same way, as, for instance, an underlying medical condition does. *See, e.g.*, *United States v. Lee*, No. 18-20198 (E.D. Mich. Aug. 26, 2020) (collecting cases); *see also United States v. White*, No. 15-20040, 2020 WL 2733891, at *5 (E.D. Mich. May 26, 2020); *Carlos M.D. v. Anderson*, No. 20-3908, 2020 WL 2487646, at *8 (D.N.J. May 14, 2020); *United States v. Leigh-James*, No. 15-188, 2020 WL 4003566, at *8 (D. Conn. July 15, 2020).

Another pertinent consideration is the probability that the defendant may be exposed to the coronavirus in her present situation, which in this case appears to be quite low. Based on published reports, the BOP appears to have had unusual success holding the pandemic at bay at the Alderson facility, although a handful of active infections recently have occurred. To be sure, the government's position that the defendant is at little or no risk is less reassuring considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *See Wilson*, 961 F.3d at 849 (Cole, J., concurring) (observing that in the absence of any program of comprehensive prophylactic testing, reports of low infection rates are questionable at best); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) (same). Nevertheless, the most recent information indicates that the defendant's probability of infection is as low as it would be in a home setting, and perhaps lower given that measures taken by the BOP apparently have kept prisoners at Alderson safe throughout the many months of the pandemic's spread, despite the

recent acceleration of infections among the public at large, including in West Virginia, where daily case counts have surged beyond spring peaks to new record highs.  *See* Coronavirus Statistics: West Virginia, https://www.worldometers.info/coronavirus/usa/west-virginia/.

On similar facts, the Court recently has declined to order the release of inmates with only one recognized medical risk factor, particularly where they were confined at institutions with few or no active coronavirus cases.  *United States v. Price*, No. 15-20472, 2020 WL 5440164, at *5 (E.D. Mich. Sept. 10, 2020) (collecting cases).  There are no distinguishing facts here that warrant a different result, particularly in light of the low probability of infection.

B.

Even if the defendant has made a satisfactory showing of extraordinary and compelling medical risk, early release is not justified in this case because the relevant 3553(a) factors weigh decidedly against discharging her into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness.  That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 2020 WL 6817488 at *7 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant.  It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed.  *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant").  And any sentence reduction

- 7 -

also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Douglas's crime, although nonviolent, was an extremely serious drug offense, involving the illegal distribution of millions of doses of regulated narcotic drugs onto the streets of Detroit, through an elaborate scheme of bogus prescriptions accompanied by millions of dollars in fraudulent medical billings. The defendant had no serious prior criminal history. But that does not alleviate the immense harm that her drug vending scheme caused to the community over the years when her pill mill enterprise was active.

Moreover, the Court determined at the time of sentencing that the 11-year prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a), and one of those goals — protection of the public — was paramount in this case. The defendant has been well behaved and compliant in a prison setting. However, commendable though her conduct in prison has been, it does not alter the historical fact that the Court plainly imposed a sentence that was not greater than necessary to achieve congressional goals. Reducing that sentence to a trifling fraction of the original custodial term certainly would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated her enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, particularly in conjunction

with the remote risk of infection in the present circumstances of confinement.  On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served only small portions of their sentences, particularly where there were few or no active infections at the prisons where they were confined.  *E.g.*, *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020) ("Given the gravity of Benge's drug offense and that he has only served a fraction of his 240-month sentence, release is not appropriate. Further, Benge's drug trafficking offense suggests that he poses a continued danger to the safety of the community."); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020) ("FCI Morgantown, where Myers is held, appears to be relatively safer than many comparable institutions. The facility holds only 482 inmates, none of which have active cases of COVID-19. . . . And unlike many defendants for whom courts granted motions for compassionate release, Myers has not served the majority of his sentence. He served only about half of it.") (citations omitted).

III.

Douglas has exhausted her administrative remedies, but she has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 327) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  December 7, 2020

- 9 -