UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY DOUGLAS,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

_____/

Civil Case Number 21-11589
Criminal Case Number 16-20436
Honorable David M. Lawson

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Petitioner Shirley Douglas owned physical therapy and pain treatment clinics in the metropolitan Detroit area. The government accused her of bilking Medicare and Blue Cross out of millions of dollars by submitting false claims for unnecessary or phantom medical services and agreeing with physicians to write prescriptions for controlled substances that had no valid medical purpose. After being charged in a 13-count superseding indictment alleging health care fraud, illegal medication distribution, and money laundering, Douglas pleaded guilty to conspiracy to distribute controlled substances. Under the plea agreement, all of the other charges were dismissed. She was sentenced to 132 months in prison, to be followed by a term of supervised release. Her conviction and sentence were affirmed on appeal.

Douglas now has filed a motion to set aside her sentence and conviction, followed by numerous supplements. She raises several arguments, including a contention that she received ineffective assistance of counsel. Many of Douglas's arguments could have been raised in her direct appeal, and those arguments are forfeited. Others lack merit. And the record conclusively demonstrates that her lawyers' performance accorded with professional norms and her complaints about them have no basis in fact. The motion will be denied.

I.

The case began when the original indictment was returned on June 16, 2016. It charged Douglas, Malik Fuqua (her son), and Frank Middleton with health care fraud and drug crimes in six counts. On January 30, 2018, the government filed a superseding indictment charging Douglas and Fuqua in 13 counts, tacking on seven additional drug and money laundering charges.

According to the first superseding indictment, from sometime in 2009 through 2016, the defendants owned and managed several entities that operated physical therapy and pain management clinics at various locations in Oak Park and Southfield, Michigan. Defendant Shirley Douglas owned and operated Abyssinia Love Knot Physical Therapy, LLC ("Abyssinia"), Abyssinia Group, Inc., and 1st Priority Guardianship. The clinics run by those entities employed doctors who purportedly treated patients, and the entities submitted claims to Medicare and to Blue Cross Blue Shield of Michigan for physician office visits and physical therapy sessions. Douglas also owned and operated Abyssinia Church of God, Inc., which was a Michigan non-profit corporation chartered for the purposes of, among other things, "preaching the gospel," and "helping the marginalized." Defendant Fuqua owned and operated 1st Priority Physical Therapy, LLC ("1st Priority"), which ran similar clinics at several other locations. He also submitted claims to Medicare and Blue Cross.

The government alleged that Douglas and Fuqua recruited patients and hired persons to locate patients who would supply their personal information to be used in false claims for services that were medically unnecessary or never performed. The patients and the hawkers who found them allegedly were paid kickbacks out of the proceeds from those false claims. The defendants also hired doctors who would write prescriptions for pain medications that were medically unnecessary, and the drugs thusly obtained were passed on to the hawkers to sell for profit. In

-2-

some cases, the defendants submitted claims for services provided to patients after those persons had died.  They also concocted false medical documents such as MRI scan reports, toxicology reports, and records of prescriptions for submission to state monitoring agencies.

In Count 1 charging conspiracy to commit healthcare and wire fraud, the government alleged that the conspiracy operated from August 2009 through June 2016, and that, in all, the various entities operated by the defendants submitted false claims to Medicare totaling more than $36 million and to Blue Cross for more than $5 million.

In Counts 2 through 5 charging healthcare fraud, the indictment identified two specific claims submitted by Abyssinia (operated by Douglas) in January and August 2013, seeking reimbursement for between $120 and $225 for services purportedly provided to two different patients of the clinic, identified by pseudonyms, and two other claims submitted in March and April 2016 by 1st Priority (operated by Fuqua), for similar services and amounts for two other patients.

In Count 6 charging conspiracy to pay healthcare kickbacks, the indictment alleged that, on May 23, 2015, Douglas "advised a co-conspirator to pay kickbacks to Medicare beneficiaries in exchange for their insurance information."  First Superseding Indictment at 19, ECF No. 113, Page.ID 511.

In Count 7 charging conspiracy to distribute controlled substances, the government alleged that from August 2009 to June 2016, the defendants conspired to distribute controlled substances, namely oxycodone, oxymorphone, hydrocodone, alprazolam, and codeine phosphate, via the issuance of prescriptions for those drugs that were outside the course of usual medical practice and not for any medically legitimate purpose.

In Count 8 charging maintenance of a drug-involved premises, the government alleged that from November 2010 through August 2015 the defendants operated their various clinics for the purpose of distributing controlled substances, including in particular the Abyssinia and 1st Priority facilities at 18591 and 18597 West 10 Mile Road, in Southfield, Michigan.

In Count 9 charging conspiracy to commit money laundering, the government alleged that from January 2014 through September 2015, the defendants conspired to execute various unspecified transactions involving interstate commerce with the purpose of dissipating, concealing, and otherwise obfuscating the location, source, and ownership of funds obtained from their healthcare fraud and drug distribution schemes.

Finally, in Counts 10 through 13 charging money laundering against defendant Douglas only, the indictment identified four online transfers of funds on dates between February and August 2015 moving money between the accounts of Abyssinia Love Knot Physical Therapy, LLC and Abyssinia Church of God, Inc., which the government alleged were intended to conceal the location, source, or ownership of illegal proceeds from Douglas's clinic.

About ten days after the original indictment was returned on June 16, 2016, the Court issued a scheduling order and initially set the jury trial to begin on August 16, 2016. The proceedings subsequently were adjourned five times at the defendants' request. In the Court's December 14, 2016 order adjourning the trial and excluding time under the Speedy Trial Act, the Court stated that the government had indicated that it might seek a superseding indictment, and the Court set a deadline for filing. On January 30, 2018, the government filed a first superseding indictment, which contained the thirteen counts described above. Because of competency proceedings relating to defendant Douglas, and the appearance of new attorneys, the Court adjourned the trial two more times, and eventually it was scheduled to begin on April 9, 2019. In

-4-

the meantime, the defendants also had filed numerous motions on their own initiative and through counsel seeking suppression of evidence and dismissal of the charges on various grounds.

In the original indictment, defendant Frank Middleton also was charged as a participant in the conspiracies to commit healthcare and wire fraud and to obtain controlled substances by fraud. He pleaded guilty to those crimes on January 17, 2018. Middleton died on March 31, 2018, before he was sentenced.

On March 22, 2019, the Court denied defendant Douglas's motions to suppress physical and electronic evidence recovered through the execution of search warrants and motions by both Douglas and Fuqua seeking dismissal of the indictment on various grounds.

On September 18, 2019, Douglas pleaded guilty to Count 7 of the superseding indictment under a plea agreement with the government. The remaining counts of the indictment subsequently were dismissed on the government's motion. At the change of plea hearing, the following colloquy took place:

> THE COURT: All right. Now is the time for you to tell me in your own words what you did that makes you believe you're guilty.
>
> THE DEFENDANT: Okay. I owned and operated Abyssinia Love Knot Physical Therapy as well as a medical center. I employed doctors who I knew would write medically unnecessary prescriptions for controlled substances, and I agreed with them that they would do so.

Plea Hr'g Tr., ECF No. 282, PageID.2389. On December 30, 2019, Douglas was sentenced to 132 months in prison.

Douglas appealed her conviction and sentence arguing that "(1) the appeal-waiver provision in her plea agreement does not bar her appeal; (2) she was not competent to plead guilty; and (3) her sentence was procedurally unreasonable." *United States v. Douglas*, No. 20-1019,

2021 WL 11486977, at *1 (6th Cir. Feb. 23, 2021). The Sixth Circuit rejected all of her claims of error and affirmed in an opinion issued on February 23, 2021.

Between 2020 and 2022, Douglas filed a motion for compassionate release and several subsequent motions seeking the same relief. Douglas's first motion was denied on the merits on December 7, 2020, and her other motions were denied on procedural grounds. *United States v. Douglas*, No. 16-20436, 2022 WL 452446, at *1 (E.D. Mich. Feb. 14, 2022).

On July 7, 2021, Douglas filed a motion to vacate her conviction and sentence under 28 U.S.C. § 2255. Since then, she has filed 18 supplements, some styled as additional motions to vacate the sentence, totaling just under 600 pages of additional briefing and commentary relating to the original motion to vacate. The government filed an opposition and two supplemental responses to Douglas's numerous submissions.

## II.

Douglas filed her motion to vacate her sentence and the several supplements without the assistance of a lawyer. The filings are rambling, repetitive, and only intermittently coherent, and the precise legal grounds for some of her claims are somewhat difficult to discern. However, the Court reads the papers to raise the following grounds for relief.

First, she asserts several free-standing claims of error not tethered to any ineffective assistance claims. She contends that her conviction and sentence are unsound because (1) her right to a Speedy Trial under the Sixth Amendment was violated; (2) the conspiracy statute is ambiguous because corporations and corporate executives "do[] not have individualized scienter mens rea [sic]"; (2) the petitioner unfairly was "recharacterized from a business executive to an illegal narcotic drug dealer"; (3) the government improperly accessed confidential medical records of numerous unidentified patients during the investigations; and (4) her conviction contravenes the

holding of *Ruan v. United States*, 597 U.S. 450 (2022), in which the Supreme Court held "that 21 U.S.C. § 841's 'knowingly or intentionally' *mens rea* applies to the 'except as authorized' clause" embedded in the criminal statute and "means that in a § 841 prosecution in which a defendant meets his burden of production under § 885 [showing that she holds a valid DEA registration as a physician licensed to prescribe controlled substances], the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." 597 U.S. at 468.

Second, Douglas contends that her trial counsel was ineffective when he advised her to plead guilty to Count 7. Her arguments on this point are undeveloped and somewhat hard to follow, but she alludes to several purportedly deficient or inattentive aspects of counsel's advice concerning selective prosecution on the basis of race, "dissociation" of "actors" and "actions," failure to charge unindicted co-conspirators, use of "acquitted conduct" as a basis for culpability, and uncertainties about the drug quantity involved in the crimes.

Third, Douglas argues that her appellate counsel was ineffective by failing to raise on appeal issues concerning (1) selective prosecution; (2) Speedy Trial violations; (3) a four-point aggravated role enhancement that was applied when determining her sentencing guidelines range; (4) ineffective assistance of trial counsel; (5) "dissociation of actors and actions"; (6) "acquitted conduct"; and the impact of *Ruan* on her conviction.

It is well accepted that a federal defendant challenging her sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). And she "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the

statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

## A.

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion.  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process").  Moreover, when a defendant fails to raise an issue at trial or on direct appeal, that issue is generally forfeited.  *See Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013).

The speedy trial and *Ruan* claims are without merit for reasons discussed further below.  Also, the petitioner has not cited any legal authority demonstrating the relevance of several of her arguments, such as the contention that she "unfairly was recharacterized" as a "drug dealer," or that the prosecution involved improper "dissociation" between "actors" and "actions."  One thing, however, is certain about all of these free-standing claims of error: they all are barred on collateral review because they could have been pursued on direct appeal but were not.  *Bousley*, 523 U.S. at 621; *Regalado*, 334 F.3d at 528.  All of the free-standing claims of error are forfeited, and relief on those claims is precluded in this collateral proceeding.  *Huff*, 734 F.3d at 605-06.

## B.

As previously mentioned, Douglas also contends that her trial and appellate attorneys were constitutionally ineffective in the several ways recited above.  A claim that otherwise would be

forfeited may be raised through a collateral attack under section 2255 if a defendant "can demonstrate cause and prejudice to excuse his default." *Huff*, 734 F.3d at 606. "Ineffective assistance of counsel can constitute cause for a procedural default." *Ibid.* Furthermore, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). And a claim of ineffective assistance of counsel itself is properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

To succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). One way of establishing deficient performance is to show that defense counsel missed a meritorious argument under the controlling law. However, the failure to file a meritless motion or raise a groundless objection does not constitute deficient performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123 (noting that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* at 694.

In a federal habeas proceeding, when the Court weighs a claim of ineffective assistance,

"[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is

entitled to no relief" on her claim.  *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018).

"Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine

the truth of the petitioner's claims."  *Ibid.*  However, "[a] petitioner's mere assertion of [her]

innocence, without more, does not entitle [her] to an evidentiary hearing."  *Ibid.*

1.

The two most substantially developed claims presented by the petitioner are her arguments

that her appellate counsel was ineffective by failing to raise certain arguments on appeal, most

notably, that her speedy trial right was violated and that her conviction is unsound under *Ruan*.

The right to effective assistance of counsel includes the right to effective assistance of

appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Carpenter v. Mohr*, 163 F.3d 938,

946 (6th Cir. 1998), *rev'd on other grounds sub nom. Edwards v. Carpenter*, 529 U.S. 446 (2000).

These standards apply to claims of ineffective assistance of appellate counsel raised in a motion

under section 2255.  *Ballard v. United States*, 400 F.3d 404, 407-08 (6th Cir. 2005).  To prove

prejudice caused by appellate counsel's failure to raise an issue on appeal, however, the petitioner

must show a "a reasonable probability that inclusion of the issue would have changed the result of

the appeal."  *McFarland*, 356 F.3d at 699 (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.

2001)).

Appellate counsel's strategic decisions are entitled to a great deal of deference.  *Harrington*

*v. Richter*, 562 U.S. 86, 105 (2011) (reiterating that "the standard for judging counsel's

representation is a most deferential one").  A criminal defendant has no constitutional right to

-10-

demand that appellate counsel raise every possible colorable issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52) (quotation marks omitted). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Ibid.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (appellate counsel may be ineffective where the trial error is obvious from the record and "must have leaped out upon even a casual reading of the transcript"). But no appellate lawyer can be faulted for not raising a frivolous issue. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123.

a.

Turning first to the speedy trial argument, the claim of ineffective assistance fails on that ground because Douglas has not shown that her appellate counsel overlooked or refused to assert any meritorious challenge to the conviction based on a speedy trial violation. In fact, the Court previously ruled on this issue when it confronted and rejected a speedy trial challenge raised in a motion to vacate filed by Douglas's co-defendant, Malik Fuqua. *Fuqua v. United States*, No. 16-20436, 2023 WL 4422032, at *6-7 (E.D. Mich. July 10, 2023).

It is well established that a criminal defendant has a right to a speedy trial under the Sixth Amendment.  U.S. Const. amend. VI.  In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court identified four factors to balance when determining if that right was abridged: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of her right to speedy trial; and (4) prejudice to the defendant.  407 U.S. at 530.  The Sixth Amendment's Speedy Trial Clause does not extend to the period prior to arrest.  *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald*, 456 U.S. 1, 7 (1982).  Instead, the relevant period for a speedy trial analysis is the time between arrest and trial after charges are filed.  *Ibid.*

The relevant circumstances and the balance of factors that led the Court to reject defendant Fuqua's speedy trial challenge are indistinguishable with respect to the prosecution against Douglas, and all of the *Barker* factors here weigh equally heavily against a finding of undue delay.

As to the first factor, "[d]elays of over a year 'generally' satisfy the lengthiness requirement, thereby calling for the full *Barker* analysis."  *United States v. Thornton*, 822 F. App'x 397, 403 (6th Cir. 2020) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).  The delay in this case was lengthy — more than three years.  Douglas was indicted on June 16, 2016, and she pleaded guilty on September 18, 2019.  Consideration of the other *Barker* factors therefore is required.

"'In assessing the second factor, the reason for the delay, the court considers who is most at fault — the government or the defendant.'"  *Thornton*, 822 F. App'x at 403 (quoting *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017)).  This factor weighs against the petitioner because, as noted by the Court in its prior ruling on Fuqua's motion to vacate, the reasons for the delay in this case, so far as the record demonstrates, all are attributable to the defense, not the

government.  The Court's prior ruling included a concise review of the lengthy procedural history

of the case:

> The case began when the original indictment was returned and filed on June 16, 2016.  It charged Fuqua, Douglas, and Frank Middleton with health care fraud and drug crimes in six counts.  On January 30, 2018, the government filed a superseding indictment charging Fuqua and Douglas in 13 counts, tacking on seven additional drug and money laundering charges.
>
> Frank Middleton pleaded guilty to the fraud crimes on January 17, 2018, but he died on March 31, 2018 before he was sentenced.
>
> On June 27, 2016, in the first post-indictment scheduling order issued by the Court, the jury trial was set to begin on August 16, 2016.  The trial and pretrial deadlines subsequently were adjourned nine times upon the defendants' joint requests between July 15, 2016 and July 17, 2019.
>
> The defendants filed numerous procedural and substantive motions throughout the pretrial proceedings, both on their own initiative and through counsel.  On July 15, 2016, the defendants jointly filed a motion to expand the case budget and declare the case eligible for complex litigation budgeting, which was granted on August 24, 2016.  The defendants also jointly filed motions to extend the time for filing pretrial motions, which were granted on December 14, 2016 and March 7, 2017.  On May 7, 2017 and July 1, 2017, Fuqua filed two more motions to increase the case budget, which were granted on October 3, 2017.
>
> On February 5, 2018, Fuqua filed *pro se* motions to proceed with standby counsel and to sever and dismiss charges.  The motion to dismiss and sever was denied on February 8, 2018, and the motion to proceed with standby counsel was granted on February 14, 2018.  On the same latter date, Douglas filed through counsel a motion to dismiss the superseding indictment and three motions to suppress evidence.  On March 2, 2018, Fuqua filed five more *pro se* motions, including three separate motions to dismiss the indictment on various grounds of "vagueness and misnomer identity," multiplicitous and duplicitous charges, failure adequately to allege the elements of any federal criminal offense, concealment of exculpatory evidence, and the government's alleged failure to abide by scheduling deadlines established by the Court.  Fuqua also filed on the same date a motion for a bill of particulars.  On August 6, 2018, Douglas also filed a motion to exclude testimony by the government's expert witnesses.  Fuqua subsequently filed "notices of joinder" in all of his co-defendant's various motions.
>
> The Court held a hearing on the pretrial motions on August 7, 2018, and most were denied on the record during the hearing.  However, the Court granted one of the motions to suppress information obtained via an order under the authority of the Stored Communications Act, 18 U.S.C. 2703(d), and it took under advisement two other motions to suppress and Fuqua's motion to dismiss charges on vagueness

grounds.  The Court denied those remaining motions in an opinion issued on March 22, 2019.

Following the multiple defense-requested adjournments, the jury trial eventually was set to begin on November 19, 2019.

*Fuqua*, 2023 WL 4422032, at *2.  Douglas pleaded guilty to Count 7 of the superseding indictment on September 18, 2019, and she was sentenced on December 30, 2019.  As demonstrated by the chronology recounted above, "the overwhelming majority of delays were due to [numerous] pre-trial motions filed by [the defendants]," as well as the defendants' serial demands to delay the trial schedule and to obtain additional funding for development of the case; moreover, none of the "delays were solely attributable to the United States," and "[t]his factor thus weighs in the government's favor."  *Thornton*, 822 F. App'x at 403.

"The third *Barker* factor, the defendant's assertion of [her] right to a speedy trial, 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'"  *Ibid.* (quoting *Barker*, 407 U.S. at 531-32).  "Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance."  *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999) (citing *Barker*, 407 U.S. at 531-32).  This factor also weighs against the petitioner because Douglas never asserted her speedy trial right before attempting to raise it first via a *pro se* brief submitted during her direct appeal and subsequently by making the same argument in the present motion to vacate her sentence.  *Thornton*, 822 F. App'x at 403-04 ("Thornton first referenced his right to a speedy trial on October 19, 2018, twenty-one months after his indictment.  In the interim, he filed a host of motions requiring delay of his trial. Thornton's belated assertion 'cast[s] doubt on the sincerity of the demand and weighs in favor of the government.'" (quoting *United States v. Sutton*, 862 F.3d 547, 561 (6th Cir. 2017) (cleaned up))).

"The last *Barker* factor is concerned with the prejudice suffered by the defendant," and to carry her burden on that point the "defendant must show that 'substantial prejudice' has resulted from the delay." *Thornton*, 822 F. App'x at 404 (quoting *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003); *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993)). Prejudice must be assessed by the Court in light of the purposes of the speedy trial guarantee, which are "(1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern due to unresolved criminal charges, and (3) to minimize damage to the defense." *United States v. Sutton*, 862 F.3d 547, 561-62 (6th Cir. 2017). "Damage to the defense is the 'most serious'" of these considerations, *Thornton*, 822 F. App'x at 404 (quoting *Barker*, 407 U.S. at 532), but to make the required showing "the defendant must demonstrate 'how his defense was prejudiced with specificity,'" *ibid.* (quoting *United States v. Young*, 657 F.3d 408, 418 (6th Cir. 2011)). "When the defendant fails to 'articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced.'" *Ibid.* (quoting *United States v. Williams*, 753 F.3d 626, 634 (6th Cir. 2014)).

This factor weighs against the petitioner because she has not demonstrated that her defense was compromised in any material manner by the delay. The petitioner says that she was prejudiced because several potential witnesses (co-defendant Frank Middleton, Dr. Mohsen Djamali, Dr. Charles Lee, Dr. Rodney Shaw, and Katherine Woods) died during the pendency of the prosecution. However, nowhere in her voluminous filings has she presented any documents or testimony demonstrating what any of those persons might have contributed to the case. Instead, she merely asserts that she was prejudiced because their testimony "cannot be used," or they "cannot be cross-examined," and she offers nothing more than her own unsubstantiated speculation that the testimony would have "cleared her" of culpability for the crimes. The Court previously

confronted the same claim and rejected identical arguments raised by Douglas's co-defendant Fuqua.  Fuqua, like Douglas, also did not produce any proof of what any of the witnesses might have testified about, or how their testimony would have aided his defense. It is well settled that "[w]ithout producing or otherwise detailing the [potential] witnesses' testimony, the defendant's claim essentially relies on 'speculation about what unidentified persons might have said,' and such a showing fails to carry [the defendant's] burden to show prejudice." *Veal v. Cooper*, 936 F. Supp. 511, 514-15 (N.D. Ill. 1996) (citations omitted); *see also Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (concluding that defense counsel's failure to present witnesses did not amount to ineffective assistance of counsel because the defendant failed to identify the witnesses, indicate their availability, or specify the content of their testimony).

The *Barker* factors on balance do not favor a finding of undue delay, and the petitioner's Sixth Amendment right to a speedy trial was not violated.  The petitioner's appellate counsel therefore did not perform deficiently by not raising a speedy trial challenge.  And there is no probability that raising this issue would have changed the result of the appeal.

b.

In a supplemental filing, Douglas argues that her conviction for conspiring to distribute controlled substances is defective under the holding of *Ruan v. United States*, 597 U.S. 450 (2022), and that her appellate attorney should have raised that issue on appeal.  But *Ruan* does not help her.  The Court previously confronted the same issue and rejected the same argument when it was raised by Fuqua in his own collateral challenge:

> In *Ruan*, the Supreme Court confronted a narrow question about the elements the government must prove to convict a licensed physician for "unauthorized" distribution of controlled substances. *See* [597 U.S. at 454-55] ("The question we face concerns § 841's exception from the general prohibition on dispensing controlled substances contained in the phrase '[e]xcept as authorized.'  In particular, the question concerns the defendant's state of mind.  To prove that a

doctor's dispensation of drugs via prescription falls within the statute's prohibition and outside the authorization exception, is it sufficient for the Government to prove that a prescription was in fact not authorized, or must the Government prove that the doctor knew or intended that the prescription was unauthorized?").  The Court held that "once a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Id.* at [457].

The holding of *Ruan* is inapplicable because it is undisputed that Fuqua was not at any time a licensed physician, and there never has been any suggestion that his scheme to distribute controlled substances was in any way "authorized" by any federal law or regulation.  *See Williams v. United States*, No. 20-55, 2022 WL 16936253, at *3 (E.D.N.C. Nov. 14, 2022) (holding that *Ruan* "did not introduce a new scienter standard for all prosecutions under 21 U.S.C. § 841.  "Instead, the change in scienter requirement applies only to the state of mind that the Government must prove to convict a doctor of violating 21 U.S.C. § 841") (citations and quotations omitted) (denying motion to amend 2255 petition to add a claim under *Ruan*).

*Fuqua*, 2023 WL 4422032, at *7.  The same analysis applies here, and the same conclusion follows.

The petitioner's appellate counsel was not ineffective by failing to raise a meritless challenge to the conviction based on *Ruan*.

Moreover, as the government points out, the petitioner admitted during her plea colloquy that she did in fact knowingly agree with physicians employed by her that the doctors would issue medically unnecessary prescriptions for controlled substances.  Plea Hr'g Tr., ECF No. 282, PageID.2389.  That admission is fatal to any claim that the petitioner was prejudiced by any purported failure to charge or inform her further about the knowledge element of the crime.  *See Brown v. United States*, No. 20-3632, 2021 WL 2470311, at *3 (6th Cir. May 21, 2021) (holding that the defendant's admissions at the guilty plea hearing that he know of his prior felony record satisfied the scienter element for a conviction under 18 U.S.C. § 922(g)(1)).

2.

The petitioner alludes to several allegedly deficient aspects of her trial counsel's advice at the guilty plea stage. To succeed on an ineffective assistance claim in the context of a guilty plea, the petitioner "must point to evidence showing a 'reasonable probability' that, but for [her] counsel's error, [she] wouldn't have pled guilty and instead would have gone to trial." *United States v. Singh*, 95 F.4th 1028, 1033-34 (6th Cir. 2024). "This test has several components. [First, the petitioner] must demonstrate that going to trial 'would have been rational' under the circumstances of [her] case. That inquiry is objective, not subjective. Next, [she] must point to evidence contemporaneous with [her] plea showing it's reasonably likely [she] would have taken that route. Only in 'unusual circumstances' will a defendant who conceded guilt at the plea stage be able to meet this 'high bar.'" *Ibid.* (citing *Lee v. United States*, 582 U.S. 357, 369-70 (2017); *Kimbrough v. United States*, 71 F.4th 468, 473 (6th Cir. 2023); *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012)).

The legal relevance of some aspects of her argument are difficult to discern, since she cites no legal authority demonstrating that her attorney counseled her inappropriately or that she was prejudiced by any advice concerning such matters as "dissociation" of "actors" and "actions," ambiguity of the conspiracy statute, "mischaracterization" of the petitioner as a "drug dealer" rather than a "corporate officer," "improper access" to patient records during the investigation, or use of "acquitted conduct" as a basis for criminal liability. However, regardless of any tangential relevance that any of those concepts may have to the conviction, the record conclusively demonstrates that the petitioner fully was informed of her rights and the elements of the crime of conviction, that she knowingly and voluntarily chose to waive her rights and plead guilty, and that she freely admitted facts that established all of the elements of the crime. And the petitioner has not demonstrated that a choice to reject the plea agreement and proceed to trial would have been

rational in light of the admitted facts establishing her guilt. The record of the guilty plea proceeding here conclusively rebuts any inference that Douglas improperly was advised or coerced into pleading guilty on the conspiracy charge.

First, the Court explained all of Douglas's trial rights, and she indicated that she understood and wanted to waive them. Plea Hr'g Tr., ECF No. 282, PageID.2383-85. Second, counsel for the government recited all of the substantive provisions of the Rule 11 plea agreement on the record, and Douglas stated that she had discussed the terms of the agreement with her lawyer and understood all of them. *Id.* at PageID.2376-83. Third, the Court engaged in a colloquy in which Douglas was asked whether her trial counsel had discussed the elements of the charged crimes and the evidence against her, and Douglas stated that she had discussed the evidence, understood the charges, and was satisfied with the advice and services rendered by her counsel. *Id.* at PageID.2373-75. The Court also asked Douglas if she had been threatened or pressured to plead guilty, or if she had been promised or offered anything not covered by the terms of the Rule 11 plea agreement in exchange for pleading guilty, and she responded emphatically in the negative. *Id.* at PageID.2380-83. In short, the plea record demonstrates that Douglas understood her rights and wished to waive them, understood the charges and wished to plead guilty because she was in fact guilty, and was satisfied with the legal advice she had received. She has put forth no evidence calling into question the veracity of her statements on the record at the plea hearing. To the contrary, her "[s]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). That unimpeached record belies any claim that Douglas improperly was coached or otherwise deceived into pleading guilty for any reasons other than those which she stated on the record.

The most coherent claim of deficient performance framed by the petitioner is her contention that certain witnesses might have testified in her favor but either were not investigated or became unavailable due to delays in the proceedings.  The reasons why trial counsel may have made certain decisions, such as deciding whether or not to pursue certain witnesses, including those identified above, are not fully illuminated by the record, and if there is room for any factual debate about the circumstances attending the representation, an evidentiary hearing typically is required to explore counsel's conduct and decision making.  *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018).  However, an evidentiary hearing is not required where the record "conclusively shows that the petitioner is entitled to no relief" on her claim.  *Ibid.*  Here, the record establishes conclusively that the claim of ineffective assistance is without merit.

It is well settled that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Rayner v. Mills*, 685 F.3d 631, 640 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 691).  But when evaluating counsel's decisions whether to investigate, a court must "apply[] a heavy measure of deference to counsel's judgments."  *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (citing *Strickland*, 466 U.S. at 690-91).  When the petitioner predicates an ineffective-assistance-of-counsel claim on a failure to call a witness, she must provide the substance of the missing witnesses' potential testimony.  *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).  And, if she fails to do so, then the petitioner cannot establish that her counsel performed deficiently or that she was actually prejudiced.  *Ibid.* (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006)).  In this instance, as noted above, the petitioner has failed to bring forth any evidence about the substance of any testimony that might have been offered by any of the identified witnesses who either died or were not investigated by defense counsel.  She therefore cannot demonstrate that any failure by her counsel fully to

investigate or summon those witnesses prejudiced her defense.  And, to reiterate, at the guilty plea hearing, she expressed satisfaction with the performance of her attorneys.  Plea Hrg. Tr., ECF No. 282, PageID.2373-75.

The petitioner has not made a sufficient showing that she was prejudiced by any alleged failures in performance by her trial counsel at the guilty plea stage of the proceedings.

III.

Except for some of the petitioner's claims of ineffective assistance of counsel, the arguments presented in this motion to vacate the sentence have been forfeited and do not warrant relief.  The claims of ineffective assistance of trial and appellate counsel are without merit, and no hearing is required for that determination.

Accordingly, it is **ORDERED** that the petitioner's motion to file an addendum to her motions to vacate sentence (ECF No. 414) is **GRANTED**, and the filing is accepted.

It is further **ORDERED** that the petitioner's motions and supplements to vacate her sentence (ECF No. 356, 360, 364, 423) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 26, 2024